# UNITED STATES DISTRICT COURT
for the

Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Angel Ruben HERNANDEZ Jr.<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)           6:23-mj-1571<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   April 20, 24, and May 1, 2023   in the county of   Orange   in the
Middle   District of   Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(b)(5), (m), and (t)(1)(A) | Failure to record required information about purchaser by FFL, Falsification of records by FFL, and Failure to conduct a background check |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Brooke Zimmerman
Printed name and title

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:  May 19, 2023

_____
Judge's signature

City and state:   Orlando, FL     Robert M. Norway, U.S. Magistrate Judge
Printed name and title

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  Case No. 6:22-mj-1571

ANGEL RUBEN HERNANDEZ, JR   18 U.S.C. § 922(b)(5)
 18 U.S.C. § 922(m)
 18 U.S.C. § 922(t)(1)(A)

**AFFIDAVIT IN SUPPORT OF CRIMINALCOMPLAINT**

I, Brooke Zimmerman, being duly sworn, do hereby depose and state the following:

INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent ("SA") with the United States Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the Orlando III Field Office. I have been employed as a SA with ATF since July 2014. I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC") in 2014. I completed Special Agent Basic Training at the ATF National Academy, also located at FLETC, in February 2015. In addition, I have received specialized training in the acquisition and examination of digital media devices. Since joining the ATF, I have assisted in multiple investigations that involved observing controlled buys of controlled substances and firearms, surveillance, firearms trafficking, straw purchases, arson, and explosive incidents. I have a Bachelor of Science Degree in Political Science-International Studies and a Master of Science Degree in Criminal Justice.

2. I have received training concerning violations of the Gun Control Act, within Title 18 of the United Stated Code, violations of the National Firearms Act, within Title 26 of the United States Code, and various narcotics violations within Title 21 of the United States Code. In addition, I have received training regarding the following topics, although this list is not exhaustive: surveillance; interviewing; writing of warrants; handling of evidence; arrest procedures; search procedures and testifying in court. Since graduating from the Academy, I was assigned to the ATF Boise Field Office until December 2019 and transferred to the ATF Orlando III Field Office. At both Field Offices I have been tasked with investigating gun trafficking, narcotics trafficking, organized crime, street gangs, and other types of violent crime.

3. This affidavit contains information that information that I personally know and/or other law enforcement officer have provided to me. It is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of a criminal complaint charging the defendant, Angel Ruben HERNANDEZ Jr, with violations of 18 U.S.C. § 922 (b)(5) (failure to record required information about purchaser by FFL (Federal Firearms License) firearms dealer), 18 U.S.C. § 922(m) (falsification of records by FFL); 18 U.S.C. § 922(t)(1)(A) (failure to conduct a background check).

## FEDERAL FIREARMS LICENSING AND REQUIREMENTS

5. A Federal Firearms License (FFL) is required for those individuals or companies who wish to engage in the business of manufacturing, importing, gunsmithing, pawnbrokering, and/or dealing in firearms. In order to obtain such a license, an individual or company must complete an application and pay a fee to the Office of the Attorney General. Upon approval, an FFL is then required to complete and maintain records concerning the receipt, sale, and transfer of firearms and these records are subject to inspection and examination by the government.

6. An FFL is generally required to maintain accurate records of gun acquisitions and dispositions to unlicensed individuals and other FFLs. When an FFL sells a firearm to an unlicensed individual a Firearms Transaction Record ATF Form 4473 (5300.9) must be filled out by both the unlicensed purchaser and the FFL. The ATF Form 4473 form is designed to identify the serial number and type of firearm sold, the seller, the person purchasing the firearm and whether or not the purchaser is eligible to possess or buy a firearm. Eligibility to purchase a firearm is determined by the person's answers to a series of questions, which cover a list of disqualifying factors under federal law such as whether the purchaser is a convicted felon, has a history of drug abuse or mental incapacity or has legal status to be in the United States.

7. Based on the unlicensed individual's answers provided on the ATF Form 4473, the FFL will contact Florida Department of Law Enforcement (FDLE) who is Florida's point of contact for National Criminal Instant Background Checks,

to run a background check on the purchaser to ensure that individual is not prohibited from receiving a firearm.

8. An FFL is also required to submit a Report of Multiple Sales or other Dispositions of Pistols and Revolvers (ATF Form 3310.4) whenever they sell or otherwise dispose of, at one time or during any five consecutive business days, two or more pistols, or revolvers, or any combination of pistols and revolvers totaling two or more to an unlicensed person. Like Form 4473, the information on a Form 3310.4 is required to be complete and accurate. One purpose of this requirement is to notify the ATF in real time of those who may be engaged in the unlawful business of firearms dealing or resale of firearms to persons who cannot purchase firearms from a lawful, licensed dealer, such as convicted felons and other persons prohibited from possessing firearms.

9. It is unlawful for an FFL to fail to record or falsify documentation in connection with the sale of firearms.  18 U.S.C. §§ 922 (b)(5), 922(m).  It is also unlawful for an FFL to sell a firearm without first conducting a criminal background check. 18 U.S.C. § 922 (t)(1)(A).

10. HERNANDEZ is a "responsible person" for Arms Hill LLC. Essentially, this means that HERNANDEZ is an individual with power to direct or cause the direction of the Arms Hill LLC, the licensed FFL, as it relates to firearms.

## PROBABLE CAUSE

11. Between June 2022 and March 2023, the Federal Bureau of Investigation conducted an investigation into a drug trafficking organization

operating in central Florida. During their investigation, the FBI obtained evidence that Angel HERNANDEZ, the owner of and a "responsible person" for FFL Arms Hill LLC (FFL No. 159117015F52042), was conducting unlawful firearms sales and transfers. Specifically, the FBI learned that HERNANDEZ supplied firearms to those who were engaged in unlawful firearms and drug dealing and HERNANDEZ would falsify the paperwork so that there would be no official records of those sales.

12.    At all relevant times described in this affidavit, HERNANDEZ was a licensed FFL as a dealer in firearms other than destructive devices.

13.    On or about March 29, 2023, one of the charged defendants in the FBI's investigation pled guilty to unlawfully firearms dealing in violation 18 U.S.C. § 922(a)(1)(A), knowing transfer and possession of machine guns in violation of 18 U.S.C. § 922(o), conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, and possession of firearms in furtherance of that drug conspiracy, in violation of 18 U.S.C. § 924(c). This defendant, CS-1, agreed in a plea agreement to cooperate with the United States to provide testimony and other evidence of unlawful activities. The indictment charging CS-1 and the plea agreement signed by CS-1 were both publicly available documents. The fact of CS-1's federal indictment was accessible by anyone who would run a background check on CS-1.

14.    On multiple occasions, including on March 15, 2023, the FBI conducted proffer interviews of CS-1. CS-1 told the FBI that HERNANDEZ, the owner of Arms Hill LLC, routinely falsified the sales paperwork to identify third parties as the buyers of guns that CS-1 was purchasing. HERNANDEZ did this to

avoid or bypass conducting background checks of CS-1 and conceal the identity of the actual purchaser of the firearm thus allowing CS-1 to engage in unlawful firearms dealing to, among others, prohibited persons. CS-1 told the FBI that HERNANDEZ falsified paperwork when he sold CS-1 firearms, knowing that CS-1 would be unlawfully reselling those firearms to those who would not or could not directly purchase firearms from a licensed FFL dealer. CS-1 also told the FBI that HERNANDEZ would receive used firearms and sell them "off book" so as to avoid creating records of those sales. In the course of their business, CS-1 and HERNANDEZ would discuss whether a firearm for potential sale "had papers," referring to whether there was false documentation of a fake sale to a third party. Also in proffers, CS-1 indicated that HERNANDEZ currently knew that CS-1 had been arrested and was facing legal charges but that the level of HERNANDEZ's knowledge about the details of that arrest was unclear.

*April 5, 2023 Transaction*

15. On April 5, 2023, the FBI conducted a controlled meeting between CS-1 and HERNANDEZ at HERNANDEZ's home and place of business. During the meeting, HERNANDEZ discussed his current inventory of firearms and the CS inquired whether he/she could obtain firearms for a third party. HERNANDEZ advised he would be willing to do so and said that he would charge more to put the firearms in another individual's name. Based on my training and experience, I know that those knowingly engaged in unlawful firearms transactions will charge higher prices to compensate for the risk involved in such transactions and because the

6

unlawful purchasers of firearms are unable to obtain the same items at regular prices through lawful channels.

### *April 20, 2023 Transaction*

16. On April 20, 2023, ATF and FBI conducted an operation with CS-1 to purchase several firearms from HERNANDEZ at his residence. Prior to the in-person meeting, law enforcement met with CS-1 and conducted a search of CS-1 and his vehicle to ensure that CS-1 had no contraband such as weapons, narcotics, or currency other than official funds provided by law enforcement. After ensuring that CS-1 had no such items, CS-1 was outfitted with recording/transmitting device along with $2,750 in official funds for the controlled purchase.

17. At approximately 12:51 p.m., CS-1 traveled to HERNANDEZ's residence and arrived shortly thereafter. When he arrived, CS-1 was greeted by HERNANDEZ. After exchanging opening pleasantries, CS-1 and HERNANDEZ entered the residence and began discussions regarding the purchase of several firearms.

18. HERNANDEZ discussed the price of several firearms he currently had at his residence. HERNANDEZ and CS-1 agreed upon a price of $2,750 for three firearms, determined in the course of this investigation to be: a Glock, Model: 27, 40 caliber handgun, bearing serial number BCYH933 for $650, a Glock, Model: 19C, 9mm caliber handgun, bearing serial number AHNT414 for $1250; and a Glock, Model: 17C, 9mm caliber handgun, bearing serial number ACZD897 for $1050.

19. CS-1 inquired about an additional firearm in HERNANDEZ's possession and potentially wanting to purchase the firearm. HERNANDEZ advised CS-1 that the specific firearm had not been placed "on the books yet." CS-1 responded to HERNANDEZ and advised him "tell her to put in on the books and then I'll buy it." CS-1's reference to "her" is a reference to a relative of HERNANDEZ who lives with and participates in HERNANDEZ's operations. HERNANDEZ advised he would put the firearm "on the books" and would complete the "paperwork" so the CS-1 could pick up the firearm on another day.

20. Based on my training and experience, I believe that HERNANDEZ's comment that this firearm was "off the books" confirms that HERNANDEZ would possess firearms within his inventory for sale that were not documented. I believe that CS-1's request that HERNANDEZ put the firearm "on the books" was consistent with the manner in which they would conducting unlawful firearms transactions – by falsifying records. But I also believe that HERNANDEZ's maintenance of "off books" firearms within his inventory of guns for sale suggests that HERNANDEZ was selling firearms without creating required documentation.

21. The CS advised HERNANDEZ he/she was interested in purchasing several firearms to include "generation 4 23Cs." Based on my training and experience and a debrief with the CS-1, the CS-1 was referring to a Glock, Model: 23C, 4th generation. HERNANDEZ advised he would sell the CS-1 this model of firearm for $1,350 each.

22.     Throughout the conversation, HERNANDEZ and the CS-1 discussed the condition of several firearms. HERNANDEZ advised that most of his firearms are brand new. During the conversation, CS-1 purchased one of the firearms discussed and CS-1 arranged to pick up the two additional firearms at a later date after supplying HERNANDEZ with $2,750 as a down payment for all three firearms.

23.     After completing the purchase, HERNANDEZ and the CS-1 exchanged closing pleasantries and the CS travelled to a pre-arranged meeting location to meet with the FBI and ATF.  CS-1 provided the firearm he purchased – the Glock, Model: 27, 40 caliber handgun, bearing serial number BCYH933 – to law enforcement.

24.     Based on a debrief of CS-1 and review of the recordings of the April 20, 2023 transaction, HERNANDEZ (or his spouse) had filled out the ATF sale forms before CS-1 arrived at the TARGET PREMISES. CS-1 observed a printed name with the initials K.S. on the pre-filled out ATF Form 4473. K.S. is an individual with a known relationship with HERNANDEZ. HERNANDEZ did not conduct a background check on CS-1 – a background check that would have been denied since CS-1 was under indictment for federal drug and gun charges.

25.     Also based on the debrief and recordings of the April 20, 2023 transaction, CS-1 did not sign or fill out any Form 4473 or receive a receipt for the purchase of the firearms. One of the questions on the Form 4473 asks the purchaser

if they are indicted for any offenses, a question that would have elicited information about CS-1's current charges.

26. Based on my training and experience, I also know that the prices for the firearms being sold were above the retail price for these items and is an indicator that HERNANDEZ knew that CS-1 would be unable to obtain these same items through lawful channels.

*April 24, 2023 Transaction*

27. On April 24, 2023, ATF and FBI conducted a second operation involving CS-1 purchasing several firearms from HERNANDEZ at his residence.

28. On April 24, 2023, after searching and confirming CS-1 had no contraband, CS-1 was outfitted with a recording/transmitting device along with $2,000 in official funds for the planned controlled purchase.

29. At approximately 1:00 p.m., CS-1 traveled to HERNANDEZ's residence and met with him shortly thereafter. After exchanging opening pleasantries, the CS and HERNANDEZ entered his residence and began discussions regarding the purchase of several firearms.

30. HERNANDEZ engaged in conversation with CS-1 regarding the firearms transaction they previously agreed upon. HERNANDEZ showed several firearms to CS-1 and discussed pricing and his ability to acquire additional firearms. CS-1 inquired with HERNANDEZ on acquiring lower receivers. HERNANDEZ advised he could do so, however, he would need to "put it on paper." HERNANDEZ advised the CS he would be willing to sell two lower receivers to

him/her that day. I know, through training an experience, that a lower receiver refers to a component of an "AR" (armalite) rifle style firearm.

31.    Throughout the transaction, HERNANDEZ was speaking with his spouse who is involved in his operation. HERNANDEZ referred to her on several occasions throughout the purchase by CS-1 about the details of the transaction, including asking her "where are the papers?" in reference to the falsified documentation.

32.    Over the course of several minutes, HERNANDEZ mentioned various firearms he was willing to sell CS-1. CS-1 advised he/she needed "two c's" (referring to a compensated model of a Glock firearm). HERNANDEZ advised that he has additional firearms in storage, referring to a location not co-located with the residence where he maintains firearms.

33.    As to the two lower receivers previously discussed, CS-1 negotiated to purchase items that were later determined to be an Aero Precision, Model: Freedom5, multi caliber lower receiver bearing serial number JULY4-7793 for $540.00 and a Palmetto State Armory, Model: PA-15, multi caliber lower receiver bearing serial SCB305132 for $200.00.

34.    After completing the purchase of five firearms and receivers, CS-1 ordered an additional three firearms to be purchased on a later date. HERNANDEZ and CS-1 exchanged closing pleasantries and CS-1 travelled to a pre-arranged meeting location to meet with law enforcement. At that location, CS-1 provided the following firearms purchased from HERNANDEZ: a Glock, Model: 19C, 9mm

caliber handgun, bearing serial number AHNT414 for $1250; a Glock, Model: 17C, 9mm caliber handgun, bearing serial number ACZD897 for $1050; a Glock, Model: 19C, 9mm caliber handgun, bearing serial number ADMW792 for $1050; an Aero Precision, Model: Freedom5, multi caliber lower receiver bearing serial number JULY4-7793 for $540; and a Palmetto State Armory, Model: PA-15, multi caliber lower receiver bearing serial SCB305132 for $200.

35. Based on a debrief of CS-1 and a review of the recorded transaction on April 24, 2023, HERNANDEZ had again pre-filled out the ATF Form 4473 with the same relative's name with initials K.S. and Hernandez's spouse had completed the multiple sales forms using K.S.'s name. At no time did CS-1 fill out any paperwork nor did HERNANDEZ run a background check on CS-1. As before, the prices charged for these items are above retail prices.

36. By the close of the transactions involving CS-1 and HERNANEZ by April 24, 2023, CS-1 had provided a total (including a downpayment) of $4,740 for 6 firearms or components.

37. Subsequently in the investigation, a search of ATF databases revealed that the sales to CS-1 on April 20 and April 24 were falsely reported as sales to K.S.

***May 1, 2023 Transaction***

38. On May 1, 2023, ATF and FBI conducted an operation in which CS-1 purchased firearms from HERNANDEZ at his residence.

39. On May 1, 2023, after being searched and found to carry no contraband, CS-1 was outfitted with a recording/transmitting device along with

12

$3,500 in official funds for the controlled purchases. At approximately 11:22 a.m., CS-1 arrived at HERNANDEZ's residence and was greeted by HERNANDEZ. After exchanging opening pleasantries, CS-1 and HERNANDEZ entered the residence and began discussions regarding the purchase of several firearms.

40. HERNANDEZ advised CS-1 he had to do "the paperwork" because he did not know what firearms the CS-1 wanted to purchase. CS-1 advised he/she wanted to purchase two "Glocks" and a "Scorpion" (referring to handgun manufacturers) for $3,500. HERNANDEZ advised he would sell CS-1 an additional firearm, referred to as a "Pioneer" for $1,000. The CS advised he/she would purchase the "Pioneer" at a later date. During the transaction, HERNANDEZ asked CS-1 to read the serial numbers of the firearms to aid him in completing the "paperwork."

41. CS-1 advised HERNANDEZ he/she wanted a better deal on the firearms in order to make more profit. CS-1 advised he/she could purchase more firearms from HERNANDEZ if CS-1 received a better deal on the firearms. HERNANDEZ discussed with the CS-1 the reporting process when an individual purchases multiple handguns in a single day.

42. Also during their interaction, CS-1 inquired if there were any gun shows this upcoming weekend, which HERNANDEZ advised there was one in West Palm, FL.

43. After completing the purchase of three firearms, CS-1 exchanged closing pleasantries and travelled to a pre-arranged meeting location to meet with

law enforcement. After being searched and found to be carrying no contraband, CS-1 provided the following firearms: a Glock, Model: 19C, 9mm caliber pistol, bearing serial number ACXG099; a Glock, Model: 23C, 40 caliber pistol, bearing serial number ABKK589; and a CZ, Model: CZ Scorpion 3 plus, 9mm caliber pistol bearing serial number G241747.

44. Based on a debrief of CS-1 and reviewing the recording of the transaction, HERNANDEZ had again pre-filled out Form 4473 for sales to CS-1 using a name with initials V.H. as the purchaser – a known relative of HERNANDEZ. CS-1 did not sign or fill out any paperwork related to his firearms purchase from HERNANDEZ and did not receive a receipt for the purchases. HERNANDEZ repeatedly referred to his spouse in discussing filling out the false paperwork for the planned sale to CS-1 – stating "where did she put the paper, she screwed it up and made a mess out of it." HERNANDEZ advised the CS-1 "she" filled out the "form" the previous day. On the video recording, HERNANDEZ and his spouse are seen filling out false paperwork for the sales to CS-1.

45. As with the prior transactions, at no point during the transaction did CS-1 fill out Form 4473 or receive a receipt related to the purchase. HERNANDEZ did not run a background check on CS-1 and the prices charged for the sold items are above retail prices.

46. A subsequent search of ATF database revealed that HERNANDEZ falsely reported the sales to CS-1 as though they were sold to V.H.

47.     Based on all of the above information, I believe that, on April 20, April 24, and May 1, HERNANDEZ falsified sale documents to indicate that he had sold these firearms to "V.H." when, in reality, he had sold this firearm to CS-1 in violation of 18 U.S.C. § 922 (b)(5), (m). I also believe that HERNANDEZ failed to conduct a background check of CS on those dates in violation of 18 U.S.C. § 922 (t)(1)(A).

48.     Based on CS-1's description of HERNANDEZ routinely falsifying documentation using certain known relations and other identified individuals and the observed transactions in April and May, I searched for the total number of firearms that HERNANDEZ purportedly sold to "K.S." and "V.H." From February 17, 2022 to April 24, 2023, ATF records indicate that he sold 50 firearms to these two individuals.

49.     I was also able to search records tracing firearms to that are recovered in violent and other crimes. These records do not record violent and other crime where no firearm is recovered and do not attempt to measure the full impact of unlawful firearms trafficking and distribution. Such records are used to identify FFLs that may be abusing their firearms license and facilitating criminal activities by distributing firearms in violation of various restrictions on their conduct, including by falsifying paperwork.

50.     Since 2019, Arms Hill has had 44 separate "traces" to law enforcement-recovered firearms. Relative to the size of its business, Arms Hill had significantly higher number of "traces" than similarly situation businesses in a similar time frame.

In my view, this is a significant indicator of persistent unlawful activity over time by HERNANDEZ.

51. This database will also record the "time to crime" – i.e., the number of days between the sale by the licensed dealer and the firearm being recovered in connection with a crime. For Arms Hill, the "time to crime" was as short as 11 days and there were at least 26 "traces" where the firearm sold by Arms Hill was recovered by law enforcement in connection with a crime within one year of sale. In my view, this, too, is a significant indicator of unlawful activity by Arms Hill.

52. Additionally, of those firearms sold to "K.S." and "V.H." four of the firearms were recovered by law enforcement in various cities to include; Aguadilla, Puerto Rico, San Juan, Puerto Rico, Miami, FL and Orlando, FL with a time to recovery ranging from 85 days to 379 days.

## CONCLUSION

53.     Based on the foregoing, I respectfully submit that there is probable cause to believe that HERNANDEZ has committed violations of 18 U.S.C. §§ 922 (b)(5), 922(m), and 922(t)(1)(A) on April 20, 24, and May 1, 2023.

54.     This concludes my affidavit.

_____
Brooke Zimmerman
Special Agent, ATF

Affidavit submitted by email and attested to me
as true and accurate via Zoom consistent
with Fed. R. Crim. P. 4.1 and 4(d)
before me this <u>19th</u> day of May 2023.

_____
HON. ROBERT NORWAY
United States Magistrate Judge

17